# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MAXUM INDEMNITY COMPANY AND SECURITY INSURANCE COMPANY OF HARTFORD as successor in interest to FIRE AND CASUALTY INSURANCE COMPANY OF CONNECTICUT, | ) ) ) ) ) | |
| | ) | Case No.: 06 C 4946 |
| Plaintiffs, | ) ) | Judge Joan H. Lefkow |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| ECLIPSE MANUFACTURING CO., AND M & M RENTAL CENTER, INC. ROBERT HINMAN and ITALIA FOODS, INC | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME the Plaintiffs, MAXUM INDEMNITY COMPANY (hereinafter "Maxum") and SECURITY INSURANCE COMPANY OF HARTFORD as successor in interest to FIRE AND CASUALTY INSURANCE COMPANY OF CONNECTICUT (hereinafter "Security"), by and through their attorneys, TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP, and for their First Amended Complaint for Declaratory Judgment against Defendants, M & M RENTAL CENTER, INC. (hereinafter "M & M Rental"), ECLIPSE MANUFACTURING CO. (hereinafter "Eclipse"), Robert Hinman and Italia Foods state as follows:

### NATURE OF ACTION AND RELIEF SOUGHT

1.     This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2.     Plaintiffs seek a declaration that they owe neither a duty to defend nor a duty to indemnify to M & M Rental with regard to the lawsuit previously styled *Eclipse Manufacturing*

*Co. v. M & M Rental Center, Inc.,* No. 06 C 1156 (N.D. Ill.) but which is now styled *Robert Hinman and Italia Foods, Inc.* v. *M and M Rental Center, Inc.*, No. 06 C 1156 (N.D. Ill.) (hereinafter "the *Eclipse/Hinman* suit").

<u>**JURISDICTION AND VENUE**</u>

3.  Maxum is a corporation organized and existing under the laws of Delaware with its principal place of business in Duluth, Georgia.

4.  Security is a corporation organized and existing under the laws of Connecticut with its principal place of business in Farmington, Connecticut.

5.  M & M Rental is a corporation organized and existing under the laws of Illinois with its principal place of business in Carol Stream, Illinois.

6.  Eclipse is a corporation organized and existing under the laws of Illinois with its principal place of business in Lake Zurich, Illinois.

7.  Robert Hinman is a resident of Barrington, Illinois.

8.  Italia Foods, Inc. is an Illinois Corporation with its principal place of business in Schaumburg, Illinois.

9.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the plaintiffs and the defendants and the amount in controversy exceeds $75,000.00.

10. The *Eclipse/Hinman* suit is a putative nationwide class action in which the named plaintiff seeks statutory damages under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA"). The TCPA allows for an award of $500 per violation, which amount is trebled to $1,500 when the violation was willful. In insurance coverage disputes involving the TCPA, the amount in controversy exceeds the $75,000 jurisdictional minimum when the insurer's potential outlay toward indemnity, in combination with its likely defense expenditure,

2

exceeds $75,000. *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006). This standard is met here because the underlying named plaintiff seeks the statutory damages available under the TCPA from each member of a *nationwide* class. Defense costs will also likely exceed $75,000 because of the magnitude of the underlying class. Defense counsel will likely prepare and file jurisdictional pleadings and motions as well as motions to dismiss. As is common in putative class action suits, defense counsel will also incur substantial fees in challenging the propriety of certifying the proposed class. Thus, defense fees in combination with the potential indemnity outlay, exceed $75,000, and federal jurisdiction is appropriate.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

## BACKGROUND

**A.      The Security Policies in Effect from February 1, 2000 to February 1, 2002**

12.     Security, as successor in interest to Fire and Casualty Insurance Company of Connecticut, issued primary commercial general liability policies bearing number RED01514500 to M & M Rental for the effective periods of February 1, 2000 to February 1, 2001 and February 1, 2001 to February 1, 2002.

13.     True and accurate copies of the Security policies in effect from February 1, 2000 to February 1, 2002 were attached as Exhibits A and B to Plaintiffs' original Complaint For Declaratory Judgment and are adopted by reference.

14.     With regard to bodily injury and property damage liability, the Security policies in effect from February 1, 2000 to February 1, 2002 provide:

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to

which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

15. The Security policies in effect from February 1, 2000 to February 1, 2002 define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

16. The Security policies in effect from February 1, 2000 to February 1, 2002 define "property damage" as:

"Property damage" means:

a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

17. The Security policies in effect from February 1, 2000 to February 1, 2002 define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

18. The Security policies in effect from February 1, 2000 to February 1, 2002 include the following relevant exclusion pertaining to "bodily injury" and "property damage."

4

This insurance does not apply to:

    a.  Expected Or Intended Injury

       "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

19.    With regard to "personal and advertising injury liability," the Security policies in effect from February 1, 2000 to February 1, 2002 provide:

    1.  Insuring Agreement

      a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

         (1)  The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

         (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

      b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

20.    The Security policies in effect from February 1, 2000 to February 1, 2002 define "personal and advertising injury" as injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

21. The Security policies in effect from February 1, 2000 to February 1, 2002 include the following relevant exclusions regarding "personal and advertising" injury:

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**B. The Security Policies in Effect from February 1, 2002 to February 1, 2004**

22. Security, as successor in interest to Fire and Casualty Insurance Company of Connecticut, also issued primary commercial general liability policies bearing number RED01514500 to M & M Rental for the effective periods of February 1, 2002 to April 3, 2002, April 3, 2002 to February 1, 2003, and February 1, 2003 to February 1, 2004.

23. True and accurate copies of the Security policies in effect from February 1, 2002 to February 1, 2004 were attached as Exhibits C, D, and E to Plaintiffs' original Complaint for Declaratory Judgment and are adopted by reference.

6

24. With regard to bodily injury and property damage liability, the Security policies in effect from February 1, 2002 to February 1, 2004 provide:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

25. The Security policies in effect from February 1, 2002 to February 1, 2004 define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

26.     The Security policies in effect from February 1, 2002 to February 1, 2004 define

"property damage" as:

> "Property damage" means:

> a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

27.     The Security policies in effect from February 1, 2002 to February 1, 2004 define

"occurrence" as "an accident, including continuous or repeated exposure to substantially the

same general harmful conditions."

28.     The Security policies in effect from February 1, 2002 to February 1, 2004 include

the following relevant exclusion pertaining to "bodily injury" and "property damage."

> This insurance does not apply to:

> **a.   Expected Or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

29.     With regard to "personal and advertising injury liability," the Security policies in

effect from February 1, 2002 to February 1, 2004 provide:

> **1.   Insuring Agreement**

> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

> (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

30. The Security policies in effect from February 1, 2002 to February 1, 2004 define "personal and advertising injury" as injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

31. The Security policies in effect from February 1, 2002 to February 1, 2004 include the following relevant exclusions regarding "personal and advertising" injury:

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

9

c. **Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

32. The Security policies in effect from February 1, 2002 to February 1, 2004 are subject to a $2,500 and/or $5,000 per occurrence deducible applicable to liability for "property damage."

C. **The Maxum Insurance Policy in Effect from February 1, 2004 to February 1, 2005**

33. Maxum issued a primary commercial general liability policy bearing number GLP 6001169 to M & M Rental for the effective period of February 1, 2004 to February 1, 2005. A copy of the Maxum policy was attached as Exhibit F to Plaintiffs' original Complaint for Declaratory Judgment and is adopted by reference.

34. With regard to bodily injury and property damage liability, the Maxum policy provides:

a. We will pay those sums that the Insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those "damages." However, we will have no duty to defend the Insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply …

\* \* \*

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

\* \* \*

d. In the event that a claim or "suit" seeks "damages," some of which are covered and other of which are not covered by this policy, the Insured must agree to a reasonable allocation of the costs and fees of defense, and the Insured will be responsible for payment of the costs and fees to defend the "damages" or claims not covered by this

10

policy. This agreement shall be reached in writing, signed by the insurer and the insured, prior to the date when a responsive pleading to the claim or "suit" is filed on behalf of the Insured." In the absence of such agreement, our duty to defend will only apply to those specific portions of the "suit" which are covered.

35.     The Maxum policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

36.     The Maxum policy defines "property damage" as:

"Property damage" means:

    (a) Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

37.     The Maxum policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

38.     The Maxum policy includes the following relevant exclusion pertaining to "bodily injury" and "property damage."

This insurance does not apply to:

    (a) Expected or Intended Injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of any Insured.

    (b) Punitive or Exemplary Damages

    Punitive or exemplary "damages" or treble or other multiple "damages" as may be allowed by statute or law.

39.     With regard to "personal injury" and "advertising injury" liability, the Maxum policy provides:

    a. We will pay those sums that the Insured becomes legally obligated to pay as "damages" because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those "damages." However, we will have no duty to defend the Insured

11

against any "suit" seeking "damages" for "personal injury" or "advertising injury" to which this insurance does not apply. . .

\* \* \*

b.  This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding "advertising," publishing, broadcasting or telecasting done by or for you; and

(2) "Advertising injury" caused by an offense committed in the course of "advertising" your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

c.  In the event that a claim or "suit" seeks "damages," some of which are covered and other of which are not covered by this policy, the Insured must agree to a reasonable allocation of the costs and fees of defense, and the Insured will be responsible for payment of the costs and fees to defend the "damages" or claims not covered by this policy. This agreement shall be reached in writing, signed by the insurer and the insured, prior to the date when a responsive pleading to the claim or "suit" is filed on behalf of the Insured." In the absence of such agreement, our duty to defend will only apply to those specific portions of the "suit" which are covered.

40.  The Maxum policy defines "personal injury" as injury, other than "bodily injury," arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;
b.  Malicious prosecution;
c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e.  Oral or written publication of material that violates a person's right of privacy.

41.  The Maxum policy defines "advertising injury" as injury arising out of one or more of the following offenses:

a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

12

      b.  Oral or written publication of material that violates a person's right of privacy; or

      c.  Misappropriation of "advertising" ideas.

42.    The Maxum policy includes the following relevant exclusions regarding advertising injury and personal injury:

This coverage does not apply to "personal injury" or "advertising injury":

\* \* \*

    (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    (4) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the Insured;

\* \* \*

    (g) Punitive or exemplary "damages" or treble or other multiple "damages" as may be allowed by statute or law.

If a "suit" is brought against the Insured or persons insured hereunder which falls within the coverage provided by this policy, but seeks both compensatory "damages" ("damages" for economic loss and pain and suffering) and punitive, exemplary or multiple "damages" ("damages" as a means of punishment), no coverage shall be provided by this policy for any costs, interest, costs of defense or "damages" attributable to punitive, exemplary or multiple "damages" and we have no duty to defend or indemnify you for any such "damages."

\* \* \*

43.    With regard to "bodily injury" and "property damage," the Maxum policy provides a $10,000 *per claim* deductible.

## THE UNDERLYING SUIT

44.    The underlying plaintiffs in the *Eclipse/Hinman* suit allege that they received unsolicited fax advertisement from M & M Rental. A First Amended Class Action Complaint was filed on July 5, 2006 and was attached to Plaintiffs' original Complaint for Declaratory Judgment as Exhibit G, which is adopted by reference.

13

45.     A Second Amended in the *Eclipse/Hinman* suit, adding Hinman and Italia Foods as plaintiffs, was filed on June 15, 2007, and a copy thereof is attached hereto as Exhibit H.

46.     The underlying plaintiffs in the *Eclipse/Hinman* suit seek the statutory award permitted by the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). This statute provides for an award of actual monetary loss from each violation or $500 in "damages" for each violation, whichever is greater. The TCPA also allows for the trebling of the award if the court finds that the violation occurred willfully or knowingly.

47.     The underlying plaintiffs in the *Eclipse/Hinman* suit attempt to establish a nationwide class action suit on behalf of all persons who received the fax in question within the four years preceding the filing of the complaint and with respect to whom the defendants cannot provide evidence of prior express permission or invitation for the sending of such faxes.

<u>COUNT ONE</u>

**FOR DECLARATORY JUDGMENT THAT SECURITY
DOES NOT OWE A DUTY TO DEFEND**

48.     Plaintiffs incorporate paragraphs 1 through 47, as if fully set forth herein.

49.     Security does not owe a duty to defend under its policies for the following reasons:

A.  The *Eclipse/Hinman* suit does not allege "bodily injury."

B.  The *Eclipse/Hinman* suit does not allege "property damage."

C.  The *Eclipse/Hinman* suit does not allege "personal and advertising injury."

D.  The underlying claimant's alleged injuries do not arise out of the publication of material as required by the policies.

E.  The underlying recipients of the fax are not "persons" and, therefore, M & M Rental is not entitled to coverage for "personal and advertising injury" arising out of the publication of material that violates a person's right of privacy.

14

F.  Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the suit does not involve an "occurrence" as that term is defined by the policies.

G.  Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the Expected or Intended Exclusion bars coverage.

H.  Even if the *Eclipse/Hinman* suit alleged "personal and advertising injury" which it does not, the Prior Publication Exclusion bars coverage.

I.  Even if the *Eclipse/Hinman* suit alleged "personal and advertising injury," which it does not, the Knowing Violations Exclusion bars coverage.

J.  The *Eclipse/Hinman* suit seeks damages that are punitive in nature, which are not covered under the policies at issue and for which coverage is barred by public policy.

K.  Security cannot owe a duty to defend for "property damage" occurring outside of its policy periods.

L.  Security cannot owe a duty to defend for "personal and advertising injury" offenses occurring outside of its policy periods.

## COUNT TWO

### FOR DECLARATORY JUDGMENT THAT SECURITY DOES NOT OWE A DUTY TO INDEMNIFY

50.  Plaintiffs incorporate paragraphs 1 through 49, as if fully set forth herein.

51.  Security does not owe a duty to indemnify under the policies for the following reasons:

A.  The *Eclipse/Hinman* suit does not allege "bodily injury."

B.  The *Eclipse/Hinman* suit does not allege "property damage."

C.  The *Eclipse/Hinman* suit does not allege "personal and advertising injury."

D.  The underlying claimant's alleged injuries do not arise out of the publication of material as required by the policies.

E.  The underlying recipients of the fax are not "persons" and, therefore, M & M Rental is not entitled to coverage for "personal and advertising injury" arising out of the publication of material that violates a person's right of privacy.

15

F. Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the suit does not involve an "occurrence" as that term is defined by the policies.

G. Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the Expected or Intended Exclusion bars coverage.

H. Even if the *Eclipse/Hinman* suit alleged "personal and advertising injury" which it does not, the Prior Publication Exclusion bars coverage.

I. Even if the *Eclipse/Hinman* suit alleged "personal and advertising injury," which it does not, the Knowing Violations Exclusion bars coverage.

J. The *Eclipse/Hinman* suit seeks damages that are punitive in nature, which are not covered under the policies at issue and for which coverage is barred by public policy.

K. The Security policies in effect from February 1, 2002 to February 1, 2004 are subject to a $2,500 and/or $5,000 per occurrence deducible applicable to liability for "property damage."

L. Security cannot owe a duty to indemnify for "property damage" occurring outside of its policy periods.

M. Security cannot owe a duty to indemnify for "personal and advertising injury" offenses occurring outside of its policy periods.

## COUNT THREE

### FOR DECLARATORY JUDGMENT THAT MAXUM DOES NOT OWE A DUTY TO DEFEND

52. Plaintiffs incorporate paragraphs 1 through 51, as if fully set forth herein.

53. Maxum does not owe a duty to defend under the policy at issue for the following

reasons:

A. The *Eclipse/Hinman* suit does not allege "bodily injury."

B. The *Eclipse/Hinman* suit does not allege "property damage."

C. The *Eclipse/Hinman* suit does not allege "personal injury."

D. The *Eclipse/Hinman* suit does not allege "advertising injury."

16

E. The underlying claimants' alleged injuries do not arise out of the publication of material as required by the policy.

F. The underlying recipients of the fax are not "persons" and, therefore, M & M Rental is not entitled to coverage for "personal injury" or "advertising injury" arising out of the publication of material that violates a person's right of privacy.

G. Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the suit does not involve an "occurrence" as that term is defined by the policy.

H. Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the Expected or Intended Exclusion bars coverage.

I. Even if the *Eclipse/Hinman* suit alleged "personal injury" or "advertising injury," which it does not, the Prior Publication Exclusion bars coverage.

J. Even if the *Eclipse/Hinman* suit alleged "personal injury" or "advertising injury," which it does not, the Willful Violations Exclusion bars coverage.

K. The *Eclipse/Hinman* suit seeks damages that are punitive in nature, which are not covered under the policy at issue and for which coverage is barred by public policy.

L. Maxum's duty to defend applies only to those specific portions of the *Eclipse/Hinman* suit which are covered, of which there are none.

M. Maxum cannot owe a duty to defend for "property damage" occurring outside of its policy period.

N. Maxum cannot owe a duty to defend for "personal injury" or "advertising injury" offenses occurring outside of its policy period.

## COUNT FOUR

### FOR DECLARATORY JUDGMENT THAT MAXUM DOES NOT OWE A DUTY TO INDEMNIFY

54.     Plaintiffs incorporate paragraphs 1 through 53, as if fully set forth herein:

55.     Maxum does not owe a duty to indemnify to M & M Rental under the policy at issue for the following reasons:

A. The *Eclipse/Hinman* suit does not allege "bodily injury."

B. The *Eclipse/Hinman* suit does not allege "property damage."

17

C. The *Eclipse/Hinman* suit does not allege "personal injury."

D. The *Eclipse/Hinman* suit does not allege "advertising injury."

E. The underlying claimants' alleged injuries do not arise out of the publication of material as required by the policy.

F. The underlying recipients are not "persons" and, therefore, M & M Rental is not entitled to coverage for "personal injury" or "advertising injury" arising out of the publication of material that violates a person's right of privacy.

G. Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the suit does not involve an "occurrence" as that term is defined by the policy.

H. Even if the *Eclipse/Hinman* suit alleged "bodily injury" or "property damage," which it does not, the Expected or Intended Exclusion bars coverage.

I. Even if the *Eclipse/Hinman* suit alleged "personal injury" or "advertising injury," which it does not, the Prior Publication Exclusion bars coverage.

J. Even if the *Eclipse/Hinman* suit alleged "personal injury" or "advertising injury," which it does not, the Willful Violations Exclusion bars coverage.

K. The *Eclipse/Hinman* suit seeks damages that are punitive in nature, which are not covered under the policy at issue and for which coverage is barred by public policy.

L. With regard to "bodily injury" and "property damage," the Maxum policy provides a $10,000 per claim deductible.

M. Maxum cannot owe a duty to indemnify for "property damage" occurring outside of its policy period.

N. Maxum cannot owe a duty to indemnify for "personal injury" or "advertising injury" offenses occurring outside of its policy period.

## **PRAYER FOR RELIEF**

WHEREFORE, SECURITY INSURANCE COMPANY OF HARTFORD as successor in interest to FIRE AND CASUALTY INSURANCE COMPANY OF CONNECTICUT and MAXUM INDEMNITY COMPANY, respectfully request that judgment be entered in their favor and against M & M Rental, as follows:

18

A. Declaring that Security does not owe a defense obligation to M & M Rental with regard to the *Eclipse/Hinman* suit.

B. Declaring that Security does not owe an indemnity obligation to M & M Rental with regard to the *Eclipse/Hinman* suit.

C. Declaring that Maxum does not owe a defense obligation to M & M Rental with regard to the *Eclipse/Hinman* suit.

D. Declaring that Maxum does not owe an indemnity obligation to M & M Rental with regard to the *Eclipse/Hinman* suit.

E. Awarding Security and Maxum their costs of this suit; and

F. Awarding Security and Maxum such other and further relief as the Court deems just.

Dated: December 3, 2007                     Respectfully submitted,

**MAXUM INDEMNITY COMPANY and SECURITY INSURANCE COMPANY OF HARTFORD, as successor in interest to FIRE AND CASUALTY COMPANY OF CONNECTICUT**

By: ___/s/Daniel J. Cunningham_____

Daniel J. Cunningham
Katherine Streicher Arnold
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000