IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAXUM INDEMNITY COMPANY<br>SECURITY INSURANCE COMPANY OF<br>HARTFORD as successor in interest to FIRE<br>AND CASUALTY INSURANCE COMPANY<br>OF CONNECTICUT, | )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) | No. 06-cv-4946 |
| v. | )<br>) | Judge Joan H. Lefkow |
| ECLIPSE MANUFACTURING CO.,<br>M&M RENTAL CENTER, INC., ROBERT<br>HINMAN and ITALIA FOODS, INC., | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## MEMORANDUM OPINION AND ORDER

First Specialty Insurance Corporation ("First Specialty"), has applied under Rule 24 of the Federal Rules of Civil Procedure to intervene (as a defendant) in this declaratory judgment action instituted by Maxum Indemnity Company ("Maxum") and Security Insurance Company of Hartford, ("Security") in connection with a coverage dispute with their mutual insured, defendant M&M Rental Center, Inc. ("M&M").[1] Like Maxum and Security, First Specialty seeks a declaration that it has no obligation to defend and indemnify M&M in an underlying lawsuit involving M&M's alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). First Specialty also seeks to bring claims against Maxum and Security for equitable

---

[1]Security is the successor in interest to a policy issued by Fire and Casualty Insurance Company of Connecticut ("FCIC"). For the purposes of this order, the court will refer to the policy issued by FCIC to M&M as Security's policy.

1

contribution. Maxum and Security oppose the petition arguing that it is untimely and that First Specialty cannot establish the other prerequisites for either intervention as a matter of right or permissive intervention. The court's jurisdiction is based in diversity. 28 U.S.C. § 1332.[2] For the reasons discussed herein, First Specialty's motion to intervene is granted.

## BACKGROUND

According to the First Amended Complaint for Declaratory Judgment [Docket No. 80] ("Amended Complaint"), this case arises from a dispute over certain insurers' obligation to indemnify or defend M&M in *Robert Hinman and Italia Foods, Inc.* v. *M and M Rental Center, Inc.*, No. 06 C 1156 ("*Hinman* suit"), currently pending in this court on Judge Bucklo's calendar. The *Hinman* suit is a class action alleging that M&M sent unsolicited faxes in violation of TCPA.[3] M&M tendered the defense to all three insurers because the offending faxes were allegedly sent sometime between 2000 and 2006, the period during which each issued to M&M general commercial insurance policies.[4] Each of these insurers provided two types of coverage to M&M: bodily injury or property damage coverage ("Coverage A") and personal and advertising injury coverage ("Coverage B"). Coverage A is similarly defined under all three insurers' policies. Coverage B, however, is not. Under Security's policy, Coverage B includes

---

[2]The first amended complaint alleges that Maxum and Security are citizens of Georgia and Connecticut, respectively, and M & M and Hinman are citizens of Illinois.

[3]The underlying suit was originally brought by Eclipse Manufacturing Co. ("Eclipse") on July 5, 2006. The complaint was amended on June 15, 2007 to add Hinman and Italia Foods as plaintiffs. Judge Bucklo granted class certification on April 7, 2008. The plaintiffs in the Hinman suit are a nationwide class of all persons who received a fax from defendants without their express permission or invitation for sending such faxes. *See* Am. Compl. ¶ 47.

[4]Security insured M&M from 2000 to 2004, Maxum from 2004 to 2005, and First Specialty from 2005 to 2006.

"[o]ral or written publication of material that violates a person's right of privacy." (Am. Compl. ¶ 20.e). Maxum's Coverage B included this same language (*id.* ¶ 40.e), as well as "'advertising injury' caused by an offense committed in the course of 'advertising' [the insured's] goods, products or services . . . ." (*Id.* ¶ 39.b.2). First Specialty's Coverage B contains neither of these clauses.[5]

Of the three insurers, only First Specialty elected to fund M&M's defense in the *Hinman* suit subject to a full reservation of rights. Maxum and Security, instead, filed this action on September 13, 2006. Judge Bucklo granted class certification in the *Hinman* suit on April 7, 2008. On June 26, 2008, First Specialty filed the instant application to intervene. By this time, however, Maxum and Security had already filed their motions for partial summary judgment on the coverage issue.[6]

First Specialty's application seeks leave to file a two-count counterclaim against Maxum and Security for a declaratory judgment that Maxum and Security have a duty to indemnify and defend M&M based on their invasion of privacy coverage and for equitable contribution based on First Specialty's expenses associated with defending M&M in the *Hinman* suit. First Specialty also seeks leave to allege a cross-claim against M&M, Eclipse, Hinman and Italia

---

[5] All three policies include within Coverage B "[o]ral or written publication of materials that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *See* Am. Compl. ¶¶ 30(d), 40(d); First Specialty's Cross-cl. ¶ 41(d).

[6] Maxum and Security filed motions for partial summary judgment in this case on April 29, 2008. On May 29, 2008, Eclipse filed a motion to strike certain portions of Maxum and Security's Rule 56.1 Statement of Facts and for an extension of time to respond to the motion for partial summary judgment. This motion remains pending, and no response to the motion for partial summary judgment has been filed.

Foods for a declaratory judgment that First Specialty does not owe a duty to indemnify or defend in the *Hinman* suit.

**ANALYSIS**

First Specialty contends it is entitled to intervene as a matter of right under Rule 24(a) because it has an interest relating to the subject matter of this action, its interest is not adequately represented by any party, and disposition of this action may as a practical matter impair its ability to protect its interest. First Specialty also argues that the court should grant permissive intervention under Rule 24(b) because common questions of law and fact are presented by its proposed pleading and there is an independent jurisdiction basis for the court's jurisdiction. Maxum and Security argue that the motion is untimely and their interests will be prejudiced if intervention is allowed. If permissive intervention is appropriate, there will be no need to address intervention as of right.

Under Rule 24(b), "on timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Rule 24(c) requires the court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *See Security Ins. Co.* v. *Schipporeit, Inc.,* 69 F.3d 1377, 1381 ("In exercising its discretion, the court must give some weight to the impact of intervention on the rights of the original parties" and consider the benefits of allowing the petition to intervene.) And, although not explicit in the rule, courts require the intervenor to demonstrate an independent ground of jurisdiction, *i.e.*, that the claims could have been asserted in the federal court in the absence of the main action. *Reedsburg Bank* v. *Apollo*, 508 F.2d 995, 1000 (7th Cir. 1975).

4

Jurisdiction is readily disposed of, as the amount in controversy is concededly more than $75,000 and the addition of First Specialty, which alleges its citizenship in Missouri and Kansas, does not disturb the complete diversity of citizenship between the plaintiffs and defendants in the case. *See* Am. Compl. ¶¶ 3-10; Ex. 1 to Pet. to Intervene, ¶¶ 2-9 of First Specialty's Countercl. and ¶ 32 of Cross-cl. Likewise, it is readily apparent that common questions of law and fact exist between the intervenor's counterclaim and cross claim and those posed by Maxum's and Security's Amended Complaint. Whether the injury alleged in *Hinman* is within or potentially within Coverage A appears to be the same for all three policies. Although the terms of Maxum's and Security's Coverage B are somewhat different, and different from First Specialty's Coverage B, First Specialty shares the common issue of whether Maxum and Security had a duty to defend or indemnify under Coverage B in order to cross the threshold of proof of its claim for equitable contribution.

In determining timeliness, the court must consider "(1) the length of time the intervenor knew or should have known of [its] interest in the case, (2) the prejudice caused to the original parties by the delay, (3) the prejudice to the intervenor if the motion is denied, and (4) any other unusual circumstances." *Reid L.* v. *Ill. State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002) (citing *Ragsdale* v. *Turnock*, 941 F.2d 501, 504 (7th Cir. 1991)). The Seventh Circuit has stated that the timeliness requirement does not "impos[e] a precise time limit" but ensures that a party cannot "drag[ ] its heels" after learning of its interest in the lawsuit. *Nissei Sangyo Am.* v. *United States*, 31 F.3d 435, 438 (7th Cir. 1994). The passage of time is not determinative; rather, "the most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Id.* at 439 (citations omitted); *see also Aurora Loan Servs.* v. *Craddieth*, 442 F.3d 1018, 1027 (7th

Cir. 2006) ("[I]n the absence of any indication of prejudice to the [existing parties] . . . the motion cannot be adjudged untimely as a matter of law."). The determination of whether an application to intervene is timely is "committed to the sound discretion of the district judge." *South* v. *Rowe*, 759 F.2d 610, 612 (7th Cir. 1985).

First Specialty does not deny that it has known about the coverage dispute since its inception. First Specialty explains or implies (albeit tardily in its reply memorandum) that it waited 21 months to apply to intervene until the *Hinman* class was certified, stating the litigation "has entered a new phase, and First Specialty seeks a resolution of its own obligation as well as those of its co-insurers." Reply in further Supp. of Pet. to Intervene at 7-8. Presumably class certification entails greater risk of expense of defense and potential indemnity, although First Specialty does not so state. Rather, First Specialty's emphasis is on the lack of prejudice to Maxum and Security because even though the case had been pending for 21 months, little discovery has been needed or taken and the motion for summary judgment rests on interpretation of the policies in light of Illinois law. Moreover, First Specialty points out it has been paying to defend M&M in the *Hinman* suit and monitoring the coverage dispute. *See Hartford Accident and Indemnity Co.* v. *Dresser Indus.*, 1994 U.S. Dist. LEXIS 1763, at *13 (N.D. Ill. Feb. 16, 1994) (granting insurers motion to intervene in a liability dispute even though insurers knew of their interest in the lawsuit from the beginning because insurers had not been "sitting on their rights in ignorance or apathy" but had monitored discovery, obtained copies of documents and depositions, and paid their *pro tanto* share of reporters' fees).

From Maxum's and Security's perspective, First Specialty's reasons for delay are unconvincing, and intervention at this time will prejudice them. They contend that resolution of their motions for partial summary judgment will be further delayed, as the affirmative defenses

6

and counterclaims will have to be answered, additional discovery will be necessary, and further dispositive motions will be needed to dispose of the additional claims. Furthermore, they argue, this expense will be unnecessary unless the court decides the coverage issue in M&M's favor.

Because the issue of timeliness and the need to weigh the burdens and benefits of intervention merge in these arguments of prejudice, the court considers them as one. Although intervention at this time will inevitably cause some delay and perhaps entail additional expense, the court is satisfied that these burdens are outweighed by the benefit to all insurers with potential liability in the *Hinman* litigation being heard in one litigation. If First Specialty is denied the opportunity to speak to the issues in this case, it will not have any opportunity to do so, both as to its affirmative defenses to Maxum's and Security's denials of coverage[7] and the critical issue of their duty to defend or indemnify as an element of First Security's right of contribution.[8] No other party is in precisely the same position as First Security as, indeed, Maxum and Security appear to concede.[9] Pls.' Resp. in Opp. to Pet. to Intervene at 13. *See Commodity Futures Trading Comm'n* v. *Heritage Capital Advisory Servs. Ltd.*, 736 F.2d 384, 386-87 (7th Cir. 1984) (citing *Central States, Southeast and Southwest Areas Health and Welfare Fund* v. *Old Security Life Insurance Co.*, 600 F.2d 671, 681 (7th Cir. 1979); *Clark* v.

---

[7]First Specialty's affirmative defense are (a) that plaintiffs' are barred from asserting their coverage defenses because they failed to timely assert them and (b) that plaintiffs' claims that they have no duty to indemnify are not ripe for adjudication.

[8]Under Illinois law, an insurer seeking equitable contribution must prove "(1) all facts necessary to the claimant's recovery against the insured; (2) the reasonableness of the amount paid to the insured; and (3) an identity between the policies as to parties and insurable risks." *Cincinnati Ins. Co.* v. *Boller Constr., Inc.,* 2006 U.S. Dist. LEXIS 10764, at *62 (N.D. Ill. Mar. 15, 2006) (quoting *Schal Bovis, Inc.* v. *Casualty Ins. Co.,* 732 N.E.2d 1179, 1186, 315 Ill. App. 3d 353, 362 (Ill. App. Ct. 1st Dist. 2004)).

[9]Maxum and Security's response includes no section on the lack of adequate representation criterion. See Pls.' Resp. in Opp. to Pet. to Intervene at 3.

*Sandusky*, 205 F.2d 915, 919 (7th Cir. 1953) ("The right to intervene is not barred by the existence of another remedy" where a petitioner may be prejudiced if not allowed to intervene.).

The court is not persuaded that additional discovery is a significant obstacle here. The pending motion for summary judgment demonstrates that, other than the dates on which the faxes were sent which has already been discovered, the evidence is almost entirely the policy documents. *See* Exhibits to Security's Statement of Material Facts [Docket No. 100]. Moreover, it appears that the parties have already undertaken discovery regarding M&M's defense costs, eliminating the need for any further discovery on those issues. Moreover, the court can accommodate the plaintiffs' concerns about expense by staying the equitable contribution claim until the coverage issues are decided. On the other hand, delay for First Specialty will cause it additional expense as well because First Specialty is the party that has been spending money on M&M's defense. On balance, the court concludes that the benefits to disposition of the issues in one case outweigh the burdens it imposes on the parties and that Maxum and Security will not be prejudiced if the application to intervene is granted.[10]

---

[10] The cases cited by Maxum and Eclipse which deal with prejudice to the original parties are distinguishable. In *Equal Employment Opportunity Commission* v. *United Airlines, Inc.,* the Seventh Circuit determined that the existing parties would be prejudiced because "discovery had been ordered closed, the final pretrial conference had been held, and hundreds of depositions, comprising thousands of pages of transcript, had been completed." 515 F.2d 946, 950 (7th Cir. 1975). Here, the coverage dispute involves mainly legal issues, and discovery, although closed, has been very limited and no depositions have been taken. In *Stupak-Thrall* v. *Glickman*, the Sixth Circuit determined that the delay in moving for intervention would prejudice the existing parties because the extensive progress achieved in settlement negotiations would have been undone. 226 F.3d 467, 472 (6th Cir. 2000). No settlement negotiations have taken place here.

**CONCLUSION AND ORDER**

For the foregoing reasons, First Specialty's petition for leave to intervene [#113] is granted.


Dated: November 5, 2008          Enter: _____
                                         JOAN HUMPHREY LEFKOW
                                         United States District Judge