**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MAXUM INDEMNITY COMPANY, and** | ) | |
| **SECURITY INSURANCE COMPANY OF** | ) | |
| **HARTFORD as successor in interest to FIRE** | ) | |
| **AND CASUALTY INSURANCE COMPANY** | ) | |
| **OF CONNECTICUT,** | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | **No. 06 C 4946** |
| | ) | |
| **v.** | ) | **Judge Joan H. Lefkow** |
| | ) | |
| **ECLIPSE MANUFACTURING CO.,** | ) | |
| **M & M RENTAL CENTER, INC., ROBERT** | ) | |
| **HINMAN and ITALIA FOODS, INC.,** | ) | |
| | ) | |
| **Defendants/Cross-Defendants/** | ) | |
| **Counter-Plaintiffs/Cross-Plaintiffs** | ) | |

**OPINION AND ORDER (AMENDED)**

This case concerns insurance coverage of underlying class action litigation, *Hinman* v. *M & M Rental Center, Inc.*, No. 06 C 1156 (N.D. Ill.), claiming violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. The underlying litigation, before Judge Elaine Bucklo of this court, settled, and the case was dismissed on October 9, 2009. In a ruling entered on January 31, 2012, this court granted summary judgment in favor of the underlying defendant, M & M Rental Center, Inc. ("M & M"), holding that Maxum Indemnity Company ("Maxum") and Security Insurance Company of Hartford ("Security") had the duty to defend and were obligated to reimburse a third carrier, First Specialty Insurance Corporation ("FSIC"), which undertook that duty with reservation of rights (and ultimately prevailed on its claim that it had no duty to defend). *See Maxum Indem. Co.* v. *Eclipse Mfg. Co.*, 848 F. Supp. 2d 871, 874-75 (N.D. Ill. 2012). That aspect of the case is fully resolved. The court, however, denied

summary judgment as to whether Maxum and/or Security have a duty to indemnify M & M for the damages amount reached in the settlement of the underlying litigation. *Id*. at 884-87. Now before the court are Maxum's and Security's renewed motions for summary judgment [dkts. 405 and 410] as to whether the class plaintiffs, as assignees of M & M's claims against Maxum and Security, have established that M & M settled "an otherwise covered loss in reasonable anticipation of personal liability." *Maxum Indem.*, 848 F. Supp. 2d at 884 (internal quotation marks and citation omitted). For the reasons stated below the court concludes that the insurers have a duty to indemnify.

## BACKGROUND

The court assumes the reader's familiarity with the background of this case, including earlier decisions, as well as the underlying litigation and will set out facts only as necessary for disposition of the remaining issues.[1]

### I. History of the Litigation

The TCPA prohibits the sending of an unsolicited advertisement via facsimile transmission without the recipient's consent. *See* 47 U.S.C. § 227(b)(1)(c). The TCPA allows a "person or entity" to bring a private right of action and allows recovery of "actual monetary loss from such a violation, or . . . $500 in damages for each . . . violation, whichever is greater." *Id*. § 227(b)(3)(B). If the court determines that the violation was willful or knowing, it has discretion to triple that award. *Id*. § 227(b)(3)(c). The TCPA protects against injury both to person and property. *See Am. States Ins. Co.* v. *Capital Assocs. of Jackson Cnty., Inc.*, 392 F.3d

---

[1] The facts relevant to resolving the present dispute regarding indemnity are taken from the court's January 31, 2012 opinion and order and the parties' Northern District of Illinois Local Rule 56.1 statements of fact.

2

939, 942 (7th Cir. 2004) (The TCPA "doubtless promotes this (slight) interest in seclusion, as it also keeps telephone lines from being tied up and avoids consumption of the recipients' ink and paper."); *Satterfield* v. *Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers . . . .'") (quoting S. Rep. No. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968).

### A. Facts Elicited In the Underlying Litigation

In August 1997, Michael Berk, M & M's president, purchased a list of approximately 5,000 names and fax numbers ("the leads list") from Corporate Marketing Inc. ("CMI"). CMI included companies on the leads list that were likely to spend more than $5,000 per year on corporate parties, meetings, and banquets. Between June 2002 and June 2006, M & M used Xpedite Systems ("Xpedite") to send fax blasts to the leads list. According to Xpedite's records, the first fax ("fax # 1") was sent on June 24, 2002 to 4,469 recipients; the second fax ("fax # 2") was sent on September 15, 2003 to 4,288 recipients; the third fax ("fax # 3") was sent on November 5, 2003 to 4,174 recipients; the fourth fax ("fax # 4") was sent on October 29, 2004 to 3,944 recipients; and the fifth fax ("fax # 5") was sent on June 23, 2005 to 3,781 recipients. *See Maxum Indem.*, 848 F. Supp. 2d at 878. Copies of faxes # 4 and # 5 were produced in the litigation. Neither side however, could locate copies of faxes # 1 - # 3 and their contents are unknown. *Id*.

### B. Motion to Dismiss for Lack of Standing Denied; Second Amended Complaint Filed

During the pleadings stage of the case, Judge Bucklo ruled that a corporation could assign its TCPA claims for property damage and thus determined that Hinman, as assignee of Eclipse Manufacturing Company, the corporation which filed the law suit, had standing to sue

and should be substituted for Eclipse as the real party in interest. *Eclipse Mfg. Co.* v. *M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 743-44 (N.D. Ill. 2007).

Hinman, along with additional plaintiff, Italia Foods, Inc., filed a second amended complaint. Paragraph 35 of that complaint alleged an injury to the plaintiffs' right to seclusion: "Defendant's faxes caused Plaintiffs and the other class members to waste their valuable time by receiving, reviewing, and routing Defendant's advertising faxes. That time otherwise would have been spent on their own business activities. Defendant's faxes unlawfully interrupted the class members' privacy interests in being left alone." Second Amended Complaint at ¶ 35, *Hinman* v. *M & M Rental Ctr., Inc.*, No. 06 C 01156 (N.D. Ill. June 15, 2007), ECF No. 98.

### C.    Class Certified

Judge Bucklo certified a class defined as

> [a]ll persons who, on or after four years prior to the filing of this action, were sent, without permission, telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of [M & M].

*Hinman* v. *M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008).

### D.    Summary Judgment Ruling

On January 27, 2009, Judge Bucklo granted the parties' cross-motions for summary judgment, in part in favor of plaintiffs and in part in favor of M & M. *See Hinman* v. *M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1163 (N.D. Ill. 2009). She ruled that plaintiffs could not recover for faxes # 1 - # 3 because they could not produce a copy of those faxes, preventing the formation of a genuine issue of material fact as to whether the faxes were advertisements within

the meaning of the TCPA.  *See id.*[2] ("What this indicates is that the determination of whether a

fax constitutes an advertisement under the TCPA requires the type of nuanced analysis that

cannot be undertaken in the abstract.").  The judge found that faxes # 4 and # 5 violated the

TCPA, however, and granted summary judgment in favor of the class as to these faxes.  On

January 27, 2009, the Clerk entered final judgment in favor of plaintiffs in the amount of

$3,862,500.[3]  (Dkt. No. 191).  Post judgment motions followed.  Relevant here, the class sought

reconsideration of the district judge's conclusion that no genuine issue of material fact existed

with respect to whether faxes # 1 - # 3 were advertisements.

### E.    Settlement

In April 2009, all parties to the litigation and to this coverage action participated in a

settlement conference with Magistrate Judge Geraldine Soat Brown.  During the conference, the

parties determined that M & M could not pay the $3.9 million judgment rendered against it and

that pursuing this claim against M & M would force it into bankruptcy.  The only means by

which M & M could satisfy this judgment was through its insurance assets.  The conference did

not result in settlement.

Negotiations later resumed among plaintiffs, M & M, and FSIC.  During a settlement

conference held with the magistrate judge on June 2, 2009, the parties reached a settlement in

---

[2]  "[T]o prevail under the TCPA, plaintiffs must show that (1) defendant used a telephone facsimile machine, computer or other device to send one or more faxes to plaintiffs' facsimile machines; (2) the faxes sent contained material advertising the commercial availability or quality of any property, goods, or services, and (3) plaintiffs did not give prior express invitation or permission for defendant to send the faxes."  *Hinman*, 596 F. Supp. 2d at 1158.

[3]  The TCPA provides for statutory damages of $500 per unsolicited fax or in the amount of the actual monetary loss, whichever is greater.  47 U.S.C. § 227(b)(3)(B).  Collectively, M & M sent 7,725 faxes on October 29, 2004 and June 23, 2005, which multiplied by $500 equals $3,862,500.

5

principle.[4]  Maxum and Security had been notified of the settlement conference but chose not to

participate.  Under the settlement terms, M & M consented to entry of judgment for $5,817,150,

which was apportioned to the five faxes as follows:  $685,350 to fax # 1; $643,200 to fax # 2;

and $626,100 to fax # 3.  Full value of faxes # 1 - # 3 would have been $6,965,500 (13,931 faxes

at $500 statutory damages). The settlement attributed full value to faxes # 4 and # 5: $1,972,000

to fax # 4 and $1,890,500 to fax # 5.[5]  Thus, the additional money over the amount of the

judgment was $1,954,650 for faxes # 1 - # 3.

On September 10, 2009, Judge Bucklo held a fairness hearing and on October 6, 2009

entered final approval of the settlement and judgment.  The order of final approval and judgment

provided that the agreement was the "result of good faith arm's length negotiations by the

parties" and was "made in reasonable anticipation of liability."  *Maxum Indem.*, 848 F. Supp. 2d

at 879 (internal quotation marks omitted).  The order stated that the settlement amount was fair

and reasonable, that the amount was "what a reasonably prudent person in [M & M's] position

would have settled for on the merits of the claims in this Litigation," and that M & M conformed

to the standard of a prudent uninsured in settling.  *Id*.  As a condition of settlement, Judge

Bucklo was to vacate the summary judgment ruling, which she did.  (Dkt. No. 225.)

**F.    The Parties' Additional Discovery on Anticipation of Liability**

After this court's order denying summary judgment as to the duty to indemnify, Maxum

and Security conducted further discovery regarding M & M's anticipation of liability when it

---

[4]  FSIC ultimately agreed to pay $100,000 into a trust for the benefit of the class to satisfy the judgment for fax # 5.  In its January 31, 2012 order, this court ruled that FSIC's policy did not cover the advertising injury alleged by the class and thus it had no duty to defend the underlying lawsuit.

[5]  These figures amount to $150 per fax for faxes # 1 - # 3 and $500 per fax for faxes # 4 and # 5.

entered into the settlement of the underlying litigation. Maxum and Security deposed M & M's President Berk, and Marc Kallish, who served as M & M's defense counsel throughout the litigation and during the settlement negotiations.

Berk testified that he oversaw the defense of the underlying lawsuit and was the ultimate decision maker regarding whether to settle and, in doing so, he communicated with and relied on the advice of Kallish. Kallish was the primary attorney responsible for communicating with Berk about the settlement and negotiating the terms of the settlement on behalf of M & M. Berk and Kallish were aware of the positions taken by the parties in the underlying lawsuit and Judge Bucklo's rulings on the motion for leave to file the second amended complaint, class certification, and summary judgment. Kallish conferred with Berk regarding the settlement negotiations and agreement. Shortly after the underlying lawsuit settled, Berk shredded his file and deleted the emails that he exchanged with Kallish. Kallish testified that M & M did not pay any proceeds to satisfy the agreed-upon judgment in the settlement; rather, the insurance companies were expected to pay the settlement amount.

Regarding the reasonableness of the settlement, Berk asserted the attorney-client privilege and refused to answer questions about conversations he had with Kallish concerning (1) the settlement generally; (2) the nature and potential amount of the liability faced by M & M at the time it entered the settlement; (3) the composition of the class that had been certified; (4) M & M's chances of succeeding on appeal; (5) whether Kallish advised Berk to accept the settlement; and (6) whether $5.8 million was an appropriate settlement amount. In his deposition, Kallish asserted that the attorney-client privilege prevented him from divulging his conversations with Berk about these issues.

Kallish also invoked the attorney-client privilege and work-product doctrine which, he stated, prevented him from answering whether he would have advised entering into the settlement if it were to be funded solely by M & M.  Berk, moreover, answered that he would have entered into the settlement agreement even if he had had to fund the entire amount.  Berk testified that not accepting the settlement agreement would have been catastrophic to his business because he had a small company that could not afford to pay for every allegedly unlawful fax sent to the class between 2002 and 2005.  Kallish testified during his deposition that he did not "have specific recollection of case law one way or another" in which an entity was held liable for a TCPA violation without proof of the content of the allegedly unlawful fax. Maxum L.R. 56. 1 Ex. E, Kallish Dep. at 74–75.

Moreover, in response to an interrogatory propounded by Maxum asking the class to "[i]dentify all persons with knowledge of whether M & M anticipated privacy-related liability in the Underlying Suit arising out faxes transmitted to business entities," the class replied in part that "M &M did not think of fax broadcasting in terms of anticipated privacy related liability when it sent faxes."  Dkt. 407–3 at Page ID 10847–48.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.  To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed. R. Civ. P. 56(c) & advisory committee's notes.  The party seeking summary judgment bears the initial burden of proving that there is no genuine

issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d
265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use
the evidentiary tools listed above to designate specific material facts showing that there is a
genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir.
2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at
598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual
dispute, *Bellavia* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all
facts in a light most favorable to the non-moving party and draw all reasonable inferences in that
party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d
202 (1986).

## ANALYSIS

### I. Damages under the TCPA Are Compensatory

Maxum and Security argue that damages under the TCPA are punitive in nature and thus
any TCPA liability incurred by M & M was not covered by their respective insurance policies.
In support of their argument, they rely on *Standard Mutual Insurance Company* v. *Lay*, which
held that the $500 in liquidated damages provided by the TCPA was a penalty constituting
punitive damages, which were uninsurable as a matter of Illinois law and public policy. 975
N.E. 2d 1099, 1106, 2012 IL App (4th) 110527, 363 Ill. Dec. 790 (2012). Shortly before Maxum
and Security filed their motions for summary judgment, however, the Illinois Supreme Court
reversed the decision of the appellate court, holding that TCPA damages are remedial and not
punitive. *Standard Mut. Ins. Co.* v. *Lay*, 989 N.E. 2d 591, 600–01, 2013 IL 114617, 371 Ill. Dec.
1 (2013). *Lay* squarely rejects Maxum and Security's present argument that the liquidated $500

damages provision under the TCPA is punitive. *See id*. at 600–01; *see also Penzer* v. *Transp. Ins. Co.*, 545 F.3d 1303, 1311 (5th Cir. 2008) ("The TCPA provides for $500 statutory damages and for treble damages for willful or knowing conduct . . ., which is an indication that the statutory damages were not designed to be punitive damages.") (collecting cases); *Universal Underwriters Ins. Co.* v. *Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) ("Whether we view the fixed award [in the TCPA] as a liquidated sum for actual harm or an incentive for aggrieved parties to act as private attorneys general, or both, it is clear that the fixed amount serves more than purely punitive or deterrent goals."). Accordingly, as damages under the TCPA are remedial, they are insurable under the Maxum and Security policies.

## II.     The Duty to Indemnify

An insured becomes legally obligated to pay when it agrees to settle a claim. *See Universal Underwriters Ins. Co.* v. *LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 937, 2011 IL App. (1st) 101723, 357 Ill. Dec. 532 (2011), *appeal denied*, 968 N.E.2d 89 (2012). Because Maxum and Security did not participate in the June 2 settlement conference, however, they now contend that the settlement was collusively aimed at them, as it was clear that M & M had inadequate resources to pay the settlement amount. *See Maxum Indem.*, 848 F. Supp. 2d at 885 (discussing policy concerns surrounding settlement of covered claims without consent of the insurer). To rebut concerns about collusion, the insured must demonstrate that the settlement was entered into in reasonable anticipation of liability. *See Guillen ex rel. Guillen* v. *Potomac Ins. Co. of Ill.*, 785 N.E.2d 1, 14, 203 Ill. 2d 141, 271 Ill. Dec. 350 (2003); *Fed. Ins. Co.* v. *Binney & Smith, Inc.*, 913 N.E.2d 43, 48, 393 Ill. App. 3d 277, 332 Ill. Dec. 448 (2009); *U.S. Gypsum Co.* v. *Admiral Ins. Co.*, 643 N.E.2d 1226, 1244, 268 Ill. App. 3d 598, 205 Ill. Dec. 619 (1994).

The insured need not establish actual liability. *SwedishAmerican Hosp. Ass'n of Rockford* v. *Ill. State Med. Inter-Ins. Exch.*, 916 N.E.2d 80, 101, 395 Ill. App. 3d 80, 334 Ill. Dec. 47 (2009). Rather, the insured's decision must be viewed through the lens of a prudent uninsured, which is a determination that "involves a commonsense consideration of the totality of facts bearing on the liability and damage aspects of [a] plaintiff's claim, as well as the risks of going to trial." *Guillen*, 785 N.E.2d at 14 (internal quotations marks omitted). "The determination of whether [the insured's] anticipation of liability was reasonable would depend on the quality and quantity of proof that [the insured] would expect to be presented against him in the underlying action." *SwedishAmerican Hosp.*, 916 N.E.2d at 101. The insurer must indemnify "so long as a potential liability on the facts known to the insured is shown to exist, culminating in an amount reasonable in view of the size of possible recovery and degree of probability of claimants['] success against the insured." *Fed. Ins. Co.*, 913 N.E.2d at 48-49 (internal quotation marks and ellipses omitted). If the insured acted reasonably in entering into the settlement, the insurer must indemnify if the claims were otherwise covered by the policy. *See Santa's Best Craft, LLC* v. *St. Paul Fire and Marine Ins. Co.*, No. 04 C 1342, 2008 WL 4328192, at *7 (N.D. Ill. Sept. 16, 2008), *rev'd on other grounds*, 611 F.3d 339, 350-52 (7th Cir. 2010).

### A. Did M & M act reasonably?

Anticipation of liability was certainly reasonable after entry of judgment for $3.9 million against M & M. But Security argues that M & M could not have reasonably anticipated any liability in connection with faxes # 1 - # 3, which are the faxes sent while its policies were in effect, because Judge Bucklo found in its favor on that issue. The class argues that Judge

11

Bucklo's fairness hearing and determination that the settlement was fair is entitled to great weight. The class also asserts that Judge Bucklo's ruling that the absence of copies of faxes # 1 - # 3 precluded the essential element of proof that the faxes were advertisements was a matter of first impression and the subject of the class's motion to amend or alter judgment and a possible appeal.[6] Moreover, plaintiffs point out that the settlement was negotiated with the assistance of the magistrate judge, who undoubtedly assessed the merits of the case in brokering the settlement. Further, that the parties discounted the value of the settlement for faxes # 1 - # 3 to 30 percent of the potential statutory damages reflects that M & M measured potential liability in light of Judge Bucklo's ruling in its favor. Moreover, Berk and Kallish testified that they discussed M & M's possible exposure for faxes # 1 - # 3 even after entry of judgment.

Whether the evidence was sufficient to go to a jury on the fact issue of whether faxes # 1 - # 3 were advertisements was not an issue of first impression but a rather ordinary judgment call for a judge who regularly handles summary judgment motions. Certainly, prevailing on the plaintiffs' post judgment motion was unlikely. *See Ahmed* v. *Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind."); *Caisse Nationale de Credit Agricole* v. *CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). That unlikelihood aside, the

---

[6] Plaintiffs argued that faxes # 1 - # 3 were advertisements in light of circumstantial evidence, namely "Michael Berk's purpose in purchasing the Leads List; copies of fliers that defendant created but that cannot be linked to any particular fax transmission; and records showing that a fax was sent to the Leads List on the dates corresponding to Faxes # 1 - # 3." *Id.* This motion remained pending during the settlement negotiations.

12

court of appeals does from time to time disagree with a district judge's conclusion that no genuine issue of material fact exists meriting a trial. *See, e.g.*, *Nipponkoa Ins. Co.* v. *Atlas Van Lines, Inc.*, 687 F.3d 780, 784-85 (7th Cir. 2012) (inadequate record left genuine issues of material fact as to whether carrier's limitation of liability was consistent with Carmack Amendment); *Smego* v. *Payne*, 469 F. App'x 470, 474-76 (7th Cir. 2012) (civil rights); *King* v. *Acosta Sales and Mktg., Inc.*, 678 F.3d 470, 474-75 (7th Cir. 2012) (Equal Pay Act); *Marr* v. *Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) (genuine issue of material fact existed as to whether consumer received two copies of notice of right to cancel contract required by Truth-In-Lending Act). But as Judge Bucklo stated in her ruling, "the determination of whether a fax constitutes an advertisement under the TCPA requires the type of nuanced analysis that cannot be undertaken in the abstract." *Hinman*, 596 F. Supp. 2d at 1163. This conclusion was unlikely to be overruled.

The totality of the evidence, however, points to the conclusion that the settlement as to faxes # 1 - # 3 was reached in reasonable anticipation of liability for those faxes. First, that a seasoned magistrate judge, who came to the bench with depth of litigation experience, guided the negotiations is a strong indication that the negotiations were arms length and that potential liability was fully and fairly assessed. Maxum and Security were invited to participate, as FSIC did, which indicates that the negotiations were conducted in good faith. The deeply discounted value of faxes # 1 - # 3 reflects that the weakness of the claim was considered. That Judge Bucklo held a fairness hearing and determined the settlement to be fair to class members is at least minimal evidence that the settlement was not collusive. Even though the odds of victory were strongly in M & M's favor as to faxes # 1 - # 3, there was potential for the district judge to

13

change her mind about summary judgment or for the court of appeals to reverse, causing at least

delay, uncertainty, and further litigation expense, factors typically favoring settlement.  Finally,

although plaintiffs have failed to offer any substantive evidence as to the advice its counsel gave

M & M's president about the prudence of the settlement, the court is not permitted, as the

insurers argue, to infer that the advice would have been unfavorable to M & M.  *See, e.g.*,

*Parker* v. *Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990); *THK Am., Inc.* v. *NSK,*
*Ltd.*, 917 F. Supp. 563, 566-67 (N.D. Ill. 1996).

### B.    Was the claim covered by Security's advertising injury provision?

The next issue is whether the claims were otherwise covered by Security's policy.

Because the advertising injury provision in Security's policy was the same as that of Maxum's

policy, this issue is addressed below with respect to whether there was a duty to indemnify for

the settlement regarding fax # 4.  The same result applies to Security.[7]

### 1.    Maxum's Liability under Its Advertising Injury Provision

Whether Maxum has a duty to indemnify for invasion of privacy with regard to fax # 4,

which was sent while its policy was in effect, is significant because this court has determined

that M & M's liability for property damage is not covered.  *Maxum Indem.*, 848 F. Supp. 2d at

880-81.  M & M's liability was certain for faxes # 4 and # 5, absent reversal on appeal, as a

judgment had been entered by mid-2009, when negotiations ensued.  The issue, then, is whether

M & M's conduct caused not only property damage but also invaded privacy protected by the

---

[7] Security argues, additionally, that the insurers could not have anticipated any privacy-related
liability to corporate class members.

TCPA. If so, Maxum must indemnify M & M for its liability to the plaintiff class for fax #4.[8]

Maxum argues that Judge Buckло's ruling giving leave for Hinman, a corporation's assignee, to proceed only on a property injury theory and the Seventh Circuit's decision in *American States* demonstrates that M & M could not have reasonably expected privacy-related liability to corporations under the TCPA. Although there is no question of reasonable anticipation of liability, the argument is germane to whether the district court dismissed claims for invasion of privacy such that a claim of coverage would be foreclosed. She did not.

In denying M & M's motion to dismiss for lack of standing of the named plaintiff, Hinman, Judge Buckло reasoned that corporations may assign claims of injury to property but not to person, such as invasion of privacy. The original plaintiff, Eclipse Manufacturing Company, could claim property injury as a result of violation of the TCPA; therefore, that claim could be assigned and Hinman could sue. Although this was sufficient to rule on the motion to dismiss for lack of standing, the court also explained its view that corporations do not have a privacy interest in seclusion (the privacy interest protected by TCPA). *See Eclipse Mfg. Co.*, 521 F. Supp. 2d at 743 (citing, *inter alia*, RESTATEMENT (SECOND) OF TORTS § 652I cmt. c (1977) ("'A corporation, partnership or unincorporated association has no personal right of privacy' and

---

[8] Citing *Santa's Best Craft, LLC* v. *St. Paul Fire and Marine Ins. Co*., 611 F.3d 339, 352 (7th Cir. 2010), Maxum asserts that the "primary focus" of the underlying settlement must have been a covered claim, meaning that plaintiffs must show that M & M, at the time it settled, anticipated *privacy-related* liability and the primary focus was resolution of privacy liability. This is not a fair reading of *Santa's Best*. There the insured failed to designate which of the claims in the underlying action addressed by the settlement were covered by the insurer's policy, and the court of appeals held that allocation was not required. However, "Illinois courts do require the insured to establish *when* the covered claims arose to allocate responsibility for paying the settlement based on which insurer's policy was in effect at the time." *Id*. at 351 (emphasis in original) (citations omitted). The problem of *Santa's Best* is not present in this case because, here, there are five claims, each for a TCPA violation, and each claim was identified with a certain settlement amount allocated to it. *Santa's Best* does not teach that a particular theory of liability must be the focus of the settlement negotiations.

therefore has no cause of action for invasion of privacy other than intrusions upon the use of its own name or identity.")); *see also Am. States*, 392 F.3d at 942 ("[B]usinesses lack interests in seclusion [because] . . . corporations are not alive."). The Seventh Circuit did not, however, condition its holding in *American States* based on the identity of the parties, *see id.* at 942–43, and the district court certified a class comprising "persons" (including business entities) who received the unwanted faxes. *See Hinman*, 545 F. Supp. 2d at 808.

*Valley Forge Insurance Company* v. *Swiderski Electronics, Inc.*, 860 N.E. 2d 307, 318, 323, 223 Ill. 2d 352, 307 Ill. Dec. 653 (2006), settled Illinois law by holding that advertising injury such as that contained in Maxum's policy covers a violation of the TCPA, which, under *American States*, protects the "(slight) interest in seclusion" that results from "an unexpected fax, like a jangling telephone or a knock on the door." *Am. States*, 392 F.3d at 942.[9] (Although this court's conclusion that advertising injury covers a business entity's interest in seclusion is inconsistent with *American States*, the Seventh Circuit was predicting Illinois law and predicted wrongly. Thus, this court believes it is correctly applying *Valley Forge* as controlling precedent on the duty to indemnify and following *American States*' conclusion that the TCPA protects an interest in seclusion.[10]) Since the TCPA makes no distinction among individuals, corporations,

---

[9] The Illinois Supreme Court has not specifically addressed whether an advertising injury provision in an insurance claim covers claims brought by corporations for privacy-related injuries arising from fax ads sent in violation of the TCPA. *But see Maxum Indem.*, 848 F. Supp. 2d at 882 (holding that the duty to defend TCPA claims under an advertising injury provision applied to corporations and individuals and reasoning that "had the [Illinois Supreme Court in *Valley Forge*] intended for its holding to apply only to 'natural' persons rather than to corporations, it would have so stated") (quoting *Pekin Ins. Co.* v. *Xdata Solutions, Inc.*, 958 N.E. 2d 397, 402–03, 2011 IL App. (1st) 102769, 354 Ill. Dec. 654 (2011)).

[10] "But the question is not how the word 'privacy' was used in the debates that led to § 227(b)(1)(c) [of the TCPA], or its implementing regulations, but what the word means in this insurance

(continued...)

16

and other business entities, it follows that the TCPA created by statute a right of privacy for all three: a right not to be intruded upon by unwanted faxes.[11]

The court, therefore, concludes that the parties settled in reasonable anticipation of liability for invasion of privacy under the TCPA and Maxum's policy covers the claim for indemnification for fax # 4. Even though the settlement was for full value of fax # 4, the likelihood of reversal on appeal was essentially nil, and the prudent course would have been to bring the litigation to a close. Because the court has concluded that the parties settled in reasonable anticipation of liability for faxes # 1 - # 3, the same conclusion follows with respect to Maxum, such that it must indemnify as to fax # 4. (As indicated above, this result also applies to Security concerning invasion of privacy as to faxes # 1 - # 3.)

---

[10](...continued)

policy. To say, as the district court did, that § 227(b)(1)(C) protects privacy . . . is to avoid the central question in the case: whether the policy covers the sort of seclusion interest affected by faxed ads." *Am. States*, 392 F.3d at 942.

[11] The Tenth Circuit found that a duty to defend exists for TCPA claims based on similar provisions encompassing advertising injuries where the fax recipient was a corporation. *See, e.g.*, *Park Universal. Enters., Inc.* v. *Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1247 n.4 (10th Cir. 2006) ("We reject out of hand [the defendant's] argument that there can be no coverage here because the named plaintiff in the underlying suit . . . is a corporation, and corporations cannot claim a right to privacy."); *see also Res. Bankshares Corp.* v. *St. Paul Mercury Ins. Co.*, 407 F.3d 631, 633 (4th Cir. 2005) (the plaintiff alleging a TCPA violation was a law firm)*; Universal Underwriters*, 401 F.3d at 878 (the plaintiff alleging a TCPA violation was a computer business).

**CONCLUSION**

For the aforementioned reasons, Maxum's and Security's motions for summary judgment

[dkts. 405 and 410] with regard to the duty to indemnify are denied.

Enter:

Dated: November 12, 2013

_____
JOAN HUMPHREY LEFKOW
United States District Judge

18